ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

RYDER, GARY

AND

VERKAIK, SAM

*Plaintiffs*

BABIS ZIOGAS a/k/a ZIOGAS, CHARALAMPOS

And, ZIOGAS, ELANA, a/k/a, ZIOGAS, ZENLYANAYA

And, MFS SHIPMANAGEMENT CORP, And,

HALCYON INVESTMENTS LLC, And, HALCYON

INVESTMENTS INC, And, HALSTEAD PROPERTIES, INC,

And, UNITED STATES DEPARTMENT OF HOMELAND

SECURITY

*Defendants*

Docket # _____

# 16 CV 02685

JUDGE CAPRONI

APRIL 10, 2016

COMPLAINT

EMERGENCY ORDER TO ENTER
PROPERTY/BUILDINGS

WRIT OF MANDAMUS

EMERGENCY EX-PARTE HEARING FOR
PRE-JUDICIAL REMEDY/ATTACHMENT

1

## COMPLAINT

This Complaint brought by Plaintiffs (Assignees and Beneficiaries) of a two building location in this District's federal circuit. The Plaintiffs complain they have been victims of fraud, common law fraud, trespass to chattels, and further, they are victims of several Defendants harboring, concealing and shielding illegal aliens and non-citizens in the buildings and upon the property of the Plaintiffs. Plaintiff Verkaik complains that Ziogas has unlawfully used his personal utility accounts, accumulated bills in his name without approval or authority, has failed to pay for those bills and services, and; Ziogas has engaged in identity theft and credit slander of Verkaik's name.

## PARTIES

1-  Plaintiffs Ryder and Verkaik are United States citizens and are residents of New York. None of the Plaintiffs are actively in the armed services of the United States.

2-  BABIS ZIOGAS a/k/a ZIOGAS, CHARALAMPOS, is a citizen of Greece who is in the United States on a temporary visa. Upon information and belief Ziogas has a pending application with the United States Immigration and Customs Enforcement division of the Department of Homeland Security.

3-  ZIOGAS, ZENLYANAYA, is a citizen of Greece or of Russia or possibly holds dual citizenship in Greece and Russia and is in the United States in a temporary VISA. Upon information and belief ZIOGAS, ZENLYANAYA is the wife of ZIOGAS, CHARALAMPOS.

2

4- MFS SHIPMANAGEMENT CORP is an international corporation engaged in worldwide commerce using ocean-going dry-bulk cargo hulls (containerized shipping). MFS SHIPMANAGEMENT CORP maintains a headquarters in Athens Greece. MFS is incorporated under the laws of the Republic of the Marshal Islands.

5- HALCYON INVESTMENTS LLC is registered by the Connecticut Secretary of State as a limited liability company which upon information and belief maintains or utilizes a commercial office space in New York County, N.Y.

6- HALCYON INVESTMENTS INC is a foreign corporation, upon information and belief is registered in the Republic of the Marshall Islands.

7- HALSTEAD PROPERTIES, INC is a real estate firm selling and renting corporate, residential and industrial real estate and is wholly owned by privately held corporation Terra Holdings, LLC, a corporation formed in Delaware.

8- United States Department of Homeland Security is a United States agency. Immigration and Customs Enforcement division (ICE) is part of the U.S. Department of Homeland Security, (DHS). The Department of Homeland Security and its division ICE is addressed in the Write of Mandaums.

## **VENUE**

9- This venue is proper because both Plaintiffs reside in this District and in this federal circuit.

3

10- This venue is proper because this District was utilized as a port-of-entry for all of the Defendants, and the illegal aliens to enter into and upon the United States excepting for Halstead Properties. The accoutrements belonging to Defendants Ziogas, C. Ziogas, L. and Halcyon entered into this District.

11- This venue is proper because the majority of events claimed in this suit occurred in this District, or effected interstate commerce in this District, or involved the instrumentalities of interstate commerce by use of the 'wires' (transmission of international funds through the Federal Reserve Bank of New York), advertising in the media in this District using the 'wires' (internet marketing, routing and hosting in this District).

12- The venue is proper to this District because Defendant Halstead maintains its business presence here, and, Halcyon Investments admittedly claimed to operate and office in this District. This admission is by written instrument.

13- The venue is proper because the Defendant ZIOGAS, CHARALAMPOS has either been a party to, or has used the District Court in the Southern District of New York and has not used or been party to actions in any other District.[1]

## JURISDICTION

13. This Court has jurisdiction under 28 U.S.C. 1332 (2) as most of the Defendants are citizens of a foreign sovereign state. Halstead Properties is wholly owned by Terra Holdings, LLC, which is a corporate citizen of the State of Delaware.

14. This Court has jurisdiction as the amount in controversy exceeds $75,000.

---

[1] See more specifically: 1:07- cv-07762 (LAP)

4

15. This Court has Constitutional authority to issue a Writ of Mandamus ordering DHS and/ or ICE to perform its regulatory function, which no state court can order.

## FACTS AND CONDITIONS PRECEDENT

16. On or about April 1, 2015 the Plaintiffs who are beneficiaries and/or hold a beneficial interest in real estate caused to be listed on the internet a two building real estate parcel for contract.

17. The listing was promulgated on various multiple listing services which could be viewed by anyone accessing the internet. Of the three offers for contract that were presented, two originated from this District, from New York County in particular. The third offer, the one relevant to this suit originated from Athens, Greece and was received by wire in this District.

18. On April 27, 2015 an offer and application for contract was sent to the Plaintiff's by a party named 'Dienstag' (the Dienstag lease). Dienstag offered $28,000 per month to contract the Plaintiffs' property. Dienstag reviewed, executed the lease and sent cashier or bank checks to the Plaintiffs.

19. While reviewing the Dienstag submission the Plaintiff received an offer from Ziogas' which was sent by internet using the wires in this District. The offer stated that the perspective contracting party was a Greek national. The offer was more fully developed when Ziogas' agent Halstead sent a formal offer and a contract application to Plaintiffs.  This offer was received by Plaintiffs on April 29, 2015 at 6:00pm.

5

20. On April 29, 2015 the Dienstag file has been fully screened and Dienstag was deemed a qualified party based upon a) credit history, b) verifiable employment c) prior residential history.

21. On April 30, 2015 when Halstead was notified that the Dienstag offer was going to be accepted, based in large measure upon the verifiability of the Dienstag credentials. On April 30, 2015 at 7:30 AM an agent for Halstead (Trager) began to lobby for the Ziogas to be given the contract. Trager was specifically told that the Ziogas' and his company MFS Shipping were an unknown and un-verifiable entity.

22. On April 29, 2015 at 12:25pm Trager on behalf of Halstead made certain representations to the Plaintiffs that contained the following exact statements:  #1)" I personally know Dr. Ziogas and his wife for many, many years. They are very close personal friends. Dr. Ziogas is a multi-millionaire and has a worldwide shipping empire. Dr. Ziogas has over two-hundred million dollars in personal assets and wealth". The Plaintiffs accepted these representations as true and relied upon these representations.

23. On April 29, 2015 at 5:45pm , Trager, on behalf of Halstead continued to lobby on behalf of Ziogas' and made the representation that " The Ziogas' are very interested in the property, and since I know them well, and his assets and income as they are, you will never have any problem with them at all, they are lovely people and have hundreds of millions of dollars- and they are a safer bet than 'your stockbrokers', and I vouch for them" (Trager for Halstead refers here to the Dienstag lease, the Dienstag couple are investment bankers in Manhattan).

6

24. On April 29, 2015 at 6:00pm Trager on behalf of Halstead transmitted a contract offer and a credit worthiness statement. The credit statement lists details of Ziogas' credit worthiness which represented '32 years of continuous employment' in international shipping, a 'successful shipping company' and $1 million dollars of post tax (net) income in U.S. dollars (not in Greek drachmas).

25. On May 5, 2015 Trager made another attempt to convince the Plaintiff to issue a long term contract to Ziogas. Trager on behalf of Halstead restated her prior statements regarding the quality and credit worthiness of her clients- the Ziogas' , restating in particular the exact words: " His worth over $200,000 million in assets, he has a shipping empire for decades and you will never have any money or payment issues with him, he collects priceless Chinese art".

26. Based upon the specific representations made to the Plaintiffs by Halstead through their agent Trager, and by Ziogas' own limited but convincing million dollar net income and 32 years of uninterrupted employment with his presently 'successful company- MFS SHIPMANAGEMENT' represented on his credit and financial statement, the Plaintiffs had a contract drafted which was transmitted electronically from New York to Ziogas in Athens, Ziogas then had the contract proposal to review. Plaintiffs alerted Dienstag that based upon certain factors the Plaintiff might not accept their offer.

27. On May 8, 2015 the Plaintiffs received a third offer which arrived from the personal attorney of soccer champion David Villa. When the attorney for Mr. Villa was told that there were multiple offers in hand, the response was: "How much does my client

7

have to pay to get the contract". The attorney indicated that his client was willing to pay in excess of asking price in order to secure the contract for his client.

28. On May 8, 2015 at 7:30pm, based upon the representations made by Ziogas regarding his assets and income (and personal emails from him regarding his very successful shipping business) and based to a great degree upon the representations made by Trager on behalf of Halstead regarding Ziogas' " shipping empire" which had "transcended decades" and Ziogas possessing assets of " over $200 million" and that "I have personal knowledge of them and their assets and credit worthiness" and " They have been close personal friends for many, many years" the Plaintiffs made a decision to execute the Ziogas contract which promised to pay $195,500 over eleven months for use of the Plaintiff's two buildings. On May 8, 2015 the Plaintiffs returned to the Dienstags their executed lease papers, credit application and their checks and bank check. The Plaintiffs then had a call made the Mr. Villa's personal attorney apologizing in part but stating that the lease was extended to another applicant.

29. On May 8, 2015 Ziogas, C. and Ziogas L. executed the lease and sent it by internet transmission to the Plaintiffs in New York. On May 8, 2015 Ziogas sent by international bank wire two wires, one originating from Deutsche Bank on an account of Halcyon Investments in Geneva Switzerland and another bank wire from MFS SHIPMANAGEMENT drawn on Piraeus Bank in Athens, Greece.

30. Defendants Ziogas, C. and Ziogas L. took legal possession of the buildings covered by the contract effective July 1, 2015. These Defendants physically took possession

8

on different dates in July and in August. When Ziogas, C arrived on or about August 9, 2015 he was accompanied by an adult woman who used the name 'Myrna'.

31. "Myrna" remained in the buildings for about 4.5 months.

32. 'Myrna' was subsequently replaced by other women who arrived from overseas ports. None of the women had any command of the English language.

33. In September 2015 Ziogas, C created a sub-contract of the smaller building in favor of Halcyon Investments.

34. At all times the Ziogas and subsequently Halcyon were to acquire all utilities into their own names and pay for a range of services particular to the building and property. These responsibilities were codified in the contract document and in an attendant rider to which Ziogas, C. and Ziogas L. had agreed when the contract was executed. By extension, Halcyon became obligated under the contract for fulfilling the same obligations.

35. At all times, every payment ever submitted relative to the contract extended to Defendants: Ziogas, C., Ziogas, L., Halcyon or MFS, the payments were drawn on various international banks in Mediterranean or North Africa. On one occasion a payment was made from a U.S. bank from an account titled to Halcyon. No payment of any kind for any reason derived from a Ziogas account.

36. In September 2015 Ziogas, C. and Ziogas L. ordered various services from Optimum Cable Company and had them added to the existing account. That account was in the name of Plaintiff Verkaik. Under the contract all accounts were to be transferred into

9

the names of Ziogas, C. and Ziogas L. The additional services included five cable boxes, an additional telephone and internet hub and wiring. These services were billed to Plaintiff's account.

37. From the date of the effective date of the contract to the date of this complaint the telephone lines, cable lines, internet lines, TV lines and boxes remain in the Plaintiff's name, they remain unpaid and late. The Plaintiff Verkaik was led to believe, because Ziogas, C. and Ziogas L. represented they had, that the Optimum services which averaged about $350 per month had been transferred to the Defendant Ziogas, C. and Ziogas L. names. This representation was false when spoken and the Plaintiffs relied upon it. The cable invoices were without exception paid sixty or seventy days late which injured the Plaintiff Verkaik's credit history. Defendant Ziogas, C specifically represented to Plaintiff Ryder on four specific times September, October and two times in November 2015 that he had transferred the cable fees into his own account name. These representations were false when made and the Plaintiffs relied upon those representations. [2]

38. During the week of February 12 to February 17, 2016 Ziogas L turned the heat supply off to the first level of the main building when the exterior temperature was Minus-5 degrees (Imperial). This action was negligent on its face. This action caused multiple pipes in interior walls inside and within the building to freeze, burst and flood. Plaintiff Ryder and the building's caretaker arrived within 49 minutes of the call from Ziogas L.  Photographs were taken of the electronic thermostat and register at 11:55

---

[2] The reason behind the Plaintiff not turning the cable account 'OFF' was that it would interrupt a significant segment of the security system and would invalidate any claim under the buildings' fire policy.

AM showing the heat controls in the OFF position. The interior ambient temperature of the first floor of the building ranged from the low 40's to mid 50's. Two other independent vendors arrived to remedy the situation and made the same observation that the heat had been turned off. The 'heat-off' caused plumbing, wall/ceiling and floor damages in addition to repair costs. This was the fourth time Ziogas, L. had been found to have turned the heat system for the first level to 'OFF', causing unnaturally cold interior ambient temperatures, which caused damage to wood and drywall/paint surfaces on the prior occasions.

39. The Defendants Ziogas, C. and Ziogas L. and Halcyon failed to pay pool costs, failed to pay landscape costs, failed to pay maintenance and repair bills, failed to open an oil fuel account, failed to provide an insurance indemnity certificate provided for by the contract.

40. On March 22, 2016 the Defendants Ziogas, C. Ziogas, L. and Halcyon made a written request to extend the existing contract for two- to -three additional years subject to slight modification of lessee's responsibilities, specifically lessening several components of the contract obligations into a single-price payment. The Plaintiffs offered an extension of the contract which included a annual reduction of $34,000 in contrast to the existing contract. On March 31, 2016 Ziogas, C. and Ziogas L. rejected the proposal and cased paying any and all bills[3]. The Defendants Ziogas, C. Ziogas, L. and Halcyon contract presently is valid through June 15th, 2016 at 12:00AM.

---

[3] A specific segment of the Extension surrounded complete and total future compliance by the Defendants Ziogas, C, and Ziogas, L and Halcyon. Compliance was forced by tiered default or failure fees.

41. The Defendants Ziogas, C. and Ziogas L. and Halcyon have defaulted on monthly contract fees, maintenance and upkeep costs and have caused the buildings and property to fall into neglect and devaluation.

42. The Defendants Ziogas, C. and Ziogas, L. and Halcyon have prohibited the Plaintiffs from entering the property (grounds and buildings' exteriors) to perform season and operational maintenance. By blocking access to complete both Plaintiff's responsibilities under the contract, and, the responsibilities belonging to the lessee's (which they have defaulted on) is causing significant ongoing and future injury to Plaintiffs through this proscribed maintenance theme these Defendants have unlawfully engaged in.

43. On at least three occasions (and possibly a fourth) the Defendant Ziogas, C, and Ziogas, L have *imported* aliens to work in the buildings, reside in the buildings and these aliens entering the United States on tourist visas are working for income (which is a criminal act) and their presence (up to and including the day of this complaint's CV # assignment) imperils the Plaintiffs as illegal or unauthorized aliens engaged in employment activities are acts that effect the Plaintiffs and the property.[4] The contract states in part: Lessee will not violate any laws. Harboring, shielding and importing illegal or unauthorized aliens is a violation of law. The Defendants Ziogas, C. and

---

[4] The Plaintiffs learned on April 5, 2016 that the women brought over (imported) are not lawful nor are any of them legally allowed to provide work or employment related services under any calculus. These women entered illegally, the Defendant's brought them into the country and the Defendants have employed them and harbored them.

Ziogas, L. and Halcyon are actively violating Immigration and Nationality Act Sections 212(a)(6)(A)(i) 24 and 237(a)(1)(B).[5]

44. In April 2015 and in May 2015 MFS SHIPMANAGEMENT (MFS) had a number of its dry-bulk cargo vessels seized under admiralty law in the process known as "arresting". When MFS failed to honor or pay its ships' mortgagees or creditors particular ships are listed by mortgagees are arrested in the port that it arrives or is berthed[6]

45. By August of 2015 a majority of ships or vessels in the MFS fleet had been arrested in rem. By August 2015 what Ziogas and Halcyon knew was occurring in March and April 2015 had fully matured by August: Ziogas and MFS' shipping empire was the subject of a world-wide in rem action and most of the ships had been arrested.

---

[5] Federal law has long threatened with criminal penalties anyone who "knowing or in reckless disregard" of an immigrant's undocumented status "conceals, harbors, or shields [the immigrant] from detection."73 This prohibition expressly includes harboring in "any building or any means of transportation."

[6] Arrest of a vessel is part of the process by which an Admiralty Court gains jurisdiction over the subject matter of a law suit. These lawsuits are known as "in rem" actions meaning that the action is again a "thing" rather than a person.

Generally, the vessel, itself, is responsible for payment of liens, mortgages or any other maritime lien that may arise. When the owner encumbers a vessel with a First Preferred Ship's Mortgage, it is the ship that guarantees payment rather than the owner. However, the owner may separately contract by a personal promise to pay or other type of guarantee to be personally liable.

An arrest of a vessel is the prerequisite for the court to establish jurisdiction. If the vessel cannot be seized, the court may have no right over the vessel. Arrest is the physical process by which, in case of the United States, a U.S. Marshal goes aboard the vessel and \physically takes charge of it. The Notice of Arrest must be posted on the vessel, a copy given to the master or person in charge, as well as to the owner. Also, notice must be published in a newspaper authorized to publish legal notices. Actual notice must be given to all other lien holders who claim an interest in the vessel. Once seized, the court, through the marshal's service or substitute custodian, maintains possession of the vessel and the owner loses all control. See Maritime law @ http://www.maritimelawcenter.com/html/foreclosures.html

46. Defendants Ziogas, C and Halcyon and MFS had prior knowledge of the in rem actions and these Defendants knew that the wealth attributed to the application to contract for the two buildings mentioned in this suit was non-existent and statements made to the Plaintiff's regarding that wealth was falsely represented and the Defendants knew the Plaintiffs would accept those statements as truthfully represented and the Defendants benefited by the Plaintiffs accepting those representations as true. The Plaintiff relied upon the material representations by the Defendants Ziogas, C. Ziogas, L. and Halcyon.

47. Halstead has a duty to know, or did know, and specifically Halstead's agent stated emphatically and unequivocally that she 'did know' and was 'intimately familiar with the Ziogas/MFS wealth, and Trager the Halstead agent reiterated repeatedly that "she was completely familiar with the Ziogas wealth, assets and ability to pay" (for the contract proposed). Halstead through Trager made these misrepresentations so the Plaintiffs would accept them as true, which they did. The Plaintiffs reacted to all of these misrepresentations as if truthfully spoken and relied upon them to their detriment. The Plaintiffs returned the Dienstag contract and pre-payments and broke off contract discussions with David Villa.

48. Halstead through Trager had knowledge of the falsity or had a reckless disregard for the truth by mis-stating her 'intimate knowledge' of the Ziogas/MFS assets, because Trager and Halstead either lacked the intimate knowledge thus misrepresenting it, or had knowledge that Ziogas and MFS shipping empire was in a massive worldwide in rem seizure, and misrepresented that fact. At all time Halstead through its agent

14

Trager, grossly misrepresented its client, its client's credit worthiness, and its client's assets, income and revenue source from MFS and Halcyon.

49. Halstead through Trager, and Ziogas and MFS made material misrepresentations regarding wealth and assets that were non-existent or had been seriously and significantly diminished by the worldwide in rem seizures of the MFS fleet under management.

50. By making these misrepresentations to the Plaintiffs Halstead, through Trager, and Ziogas and MFS knew, by offering these gross misrepresentations that the Plaintiffs would react in a certain manner. By misleading the Plaintiffs through these misrepresentations of wealth/income/assets the Plaintiffs were defrauded. These misrepresentations were knowingly false when made. These misrepresentations were presented to mislead, deceive and defraud the Plaintiffs. Defendants Ziogas, C. Ziogas, L. and Halcyon knew once they became ensconced in Plaintiffs building they could withhold payment, and contort and pervert the contract as they unilaterally did from the outset.

51. Defendants Halstead through Trager in pursuit of economic gain through payments of brokerage commissions, and Ziogas, C. and MFS through misrepresentations defrauded the Plaintiffs by first; coaxing Plaintiffs into rejecting the Dienstag lease and the subsequent return of Dienstag's funds- and then turning away the offer from Mr. Villa, all in expectation that Plaintiff's would then extend the contract to Ziogas and Halcyon, was an attempt to defraud the Plaintiff's by obtaining a contract for which Defendant Ziogas and Halcyon were not qualified for, which defrauded the

15

Plaintiff's out of a favorable contract already in hand with prepaid funds attached. Defendants Ziogas, C. Ziogas, L. and Halcyon knew prior, that MFS and Halcyon was subject to worldwide in rem actions against the Ziogas/MFS/Halcyon ships. And because of the very insular world of the maritime community this is information the Plaintiffs could ever discover independently.

## FIRST CAUSE OF ACTION
## COMMON-LAW FRAUD

52. All of the preceding paragraphs are incorporated herein as if re-pled below.

53. Halstead through its agent Trager knew that the Plaintiffs had no prior knowledge of its client Ziogas (or of MFS and Halcyon). Halstead through its agent Trager knew that the Plaintiffs had no ability to cross-verify or perform due diligence on a Greek shipper or the underlying shipping company. Halstead through its agent Trager relied upon the Plaintiff accepting the words and representations spoken and written on April 21, 2015 and April 29, 2015 and up through May 8, 2015 and accept Ziogas/ Halcyon in order to secure the contract for its client Ziogas/Halcyon. By framing the misrepresentations in the manner it did on the dates and times it did, it defrauded the Plaintiffs by making misrepresentations in an attempt to lure the Plaintiffs towards Ziogas/Halcyon and away from Dienstag and David Villa.

54. By making these misrepresentations spoken to be true and correct Halstead through its agent Trager defrauded the Plaintiffs. Once a party chooses to speak, it has a duty to be both accurate and complete. By accepting the statements as true and correct the Plaintiffs relied upon them and were subsequently injured. The injury is that

16

Ziogas/Halcyon had insufficient funds to ever meet its contractual obligations, a fact that was foreseeable to the Defendants, and Ziogas/Halcyon have completely defaulted upon their contract.

55. Ziogas and Halcyon and Ziogas through MFS made materially false representations to the Plaintiffs, and these knowingly false statements regarding income, assets and overall wealth, mislead and defrauded the Plaintiffs. The Plaintiffs relied upon these misrepresentations as if they were true and correct. The Plaintiffs cancelled the Dienstag lease, returned the Dienstag money and collaterally rejected a profitable offer from soccer player David Villa. Plaintiffs were defrauded by the misrepresentations which were provided as true and correct. Ziogas and Halcyon knew that ships were being arrested around the globe *before* the contract was signed. Any effort made by Ziogas/Halcyon to obtain the coveted contract was draped in fraud. The assets and income and accumulated wealth was shattered before the contract was executed and the wealth and assets continued to diminish as each month progressed. Ziogas /Halcyon committed common law fraud in order to acquire a contract for which Ziogas/Halcyon was not qualified to be offered.

56. By committing common law fraud Halstead through Trager and Ziogas/Halcyon injured the Plaintiffs by placing them in a position where by these Defendants knowingly presented fraudulent information, the Defendants in Para. 54 caused injury and economic harm to the Plaintiffs.

17

## COUNT TWO

### TRESPASS TO CHATTELS

57. All of the above paragraphs above are restated below as they are pled above

58. Defendants Ziogas, C. and Ziogas, L. and Halcyon have failed to make payments under the contract, and have failed to maintain the property and buildings covered by their obligations under contract.

59. Defendants Ziogas, C. and Ziogas, L. and Halcyon have intentionally failed to abide by the strict terms regarding payments and standard of care under the contract.

60. Defendants Ziogas, C. and Ziogas, L. and Halcyon have intentionally failed under the terms of the contract and have physically interfered with the chattels belonging to the Plaintiffs. Defendants Ziogas, C. and Ziogas, L. and Halcyon have possession of the Plaintiff's chattels and by interfering with the possession of the Plaintiff's chattels have harmed the Plaintiffs in a pecuniary manner, causing diminution of value by prohibiting Plaintiff's from regular, ordinary and scheduled maintenance of the buildings and property.

61. By interfering with possession of the chattels and property, and harming the Plaintiffs, the Defendants have trespassed upon the chattels of the Plaintiffs.

### COUNT THREE

### IDENTITY THEFT OF PLAINTIFF VERKAIK

62. Defendants Ziogas, C. and Ziogas, L. and Halcyon have unlawfully used a utility account attributable and owned by Plaintiff Verkaik. Upon commencement of the

18

contract period these Defendants were required to remove all utility and service accounts to names of their own. These Defendants have made and re-made representations that they had changed the Optimum account into their own name. This representation was false.

63. Defendants Ziogas, C. and Ziogas, L. and Halcyon have for nine months used, expanded the scope of service, and generated billings to this Plaintiff's name. These Defendants have used the Plaintiff's name and identifying criteria in their communications to and with Optimum, pretending to be the Plaintiff Verkaik without his knowledge or approval.  These Defendants failed to make payments to the utility in a timely manner, and in most instances not made payments at all. This conduct of using a utility account in the name of another person, who has granted no such permission or authority except for the month of August 2015, with such authority expiring on August 31, 2015, caused bills to be accrued in the name of the Plaintiff. By using the Plaintiff's account without his approval or express permission or authority is identity theft. By not paying, or paying late the utility account and damaging and tarnishing the Plaintiff's credit has caused economic injury to the Plaintiff through the unlawful use of the account. These Defendants have committed identity theft and damaged the Plaintiff's credit standing, which has injured the Plaintiff.

## COUNT FOUR

### RISK TO PLAINTIFF'S PROPERTY BY KNOWINGLY IMPORTING UNAUTHORIZED WORKERS AND HARBORING IN PLAINTIFF'S BUILDINGS

64. All of the above paragraphs are re-stated below as if re-pled

19

65. Defendants Ziogas, C. Ziogas, L. and Halcyon have engaged in a pattern and practice of:  A) recruiting foreign citizens abroad, B) accompanying the foreign citizens into the United States, C) providing shelter and employment to the foreign citizens in the Plaintiff's buildings. This pattern and practice are violations of federal immigration and criminal codes.

66.  By engaging in this pattern and practice which has involved three or four employees violates the Defendants Ziogas, C. Ziogas, L. and Halcyon contract. This conduct also violates federal immigration law and state labor law.

67. By engaging in this pattern and practice the Defendants Ziogas, C. Ziogas, L. and Halcyon places an extremely high degree of risk of seizure of the Plaintiff's buildings, land and chattels.

68. By written admission Defendant Ziogas, C. has stipulated to the Plaintiffs that the workers are not authorized to be employed in the United States.

69. Despite specific knowledge the Defendants have regarding the unlawful importation and employment of unauthorized workers in the Plaintiff's buildings the Defendant's have and continue to pose extreme risk to the Plaintiff's buildings.

70. The Plaintiffs had no knowledge that the Defendants would be using their buildings to harbor and employ unauthorized foreigners. The Defendant's first entered the United States accompanied by at least one unauthorized worker. This began and pattern and practice that began at the inception of the contract and continues to the date this complaint is filed.

71. By the unlawful act of importing and harboring unauthorized workers in the Plaintiff's buildings, the Defendants Ziogas, C. Ziogas, L. and Halcyon have placed the Plaintiffs in significant personal and financial risk. **See Writ of Mandamus.**

72. By using the Plaintiff's buildings in violation of three current INS/ICE statutes the contact becomes void; "Lease property to a tenant with the knowledge that the tenant will commit a crime or is committing a crime, the lease becomes void, *McMahon v. Anderson*, 728 A.2d 656, 659 (D.C. 1999); *Cent. States Health & Life Co. of Omaha v. Miracle Hills Ltd. P'ship*, 456 N.W.2d 474, 477 (Neb. 1990), in violation of Immigration and Nationality Act Sections 212(a)(6)(A)(i) (illegal to enter the United States without proper authorization)24 and 237(a)(1)(B)

## PRAYER FOR RELIEF

A. An award by the Court for money damages concomitant with injuries sustained by the Plaintiffs for the diminution of value of the property due to the physical damage to the buildings caused by the Defendants Ziogas, C. Ziogas, L. and Halcyon.

B. An award by the Court for money damages for Defendants Ziogas, C. Ziogas, L. and Halcyon blocking access to the property and buildings in order to effectuate proper maintenance, and in instances where the Defendants Ziogas, C. Ziogas, L. and Halcyon failed to perform required maintenance agreed upon by the contract the Defendants signed.

21

C.  An award by the Court for money damages for future loss of income resulting from the Defendants Ziogas, C. Ziogas, L. and Halcyon lack of performance under the contract, including the loss of seasonal contract of the buildings to other interested perspective contractors.

D.  Cancellation of the contract based upon fraud and based upon the controlling federal immigration statutes, see; , *McMahon v. Anderson*, 728 A.2d 656, 659 (D.C. 1999); *Cent. States Health & Life Co. of Omaha v. Miracle Hills Ltd. P'ship*, 456 N.W.2d 474, 477 (Neb. 1990)

E.  An award by the Court for all of the outstanding fees, charges, monthly operating and use fees of the buildings.

F.  An award for money damages to Plaintiff Verkaik for the identity theft by Defendants Ziogas, C. Ziogas, L. and Halcyon of Verkaik's utility accounts and an award for money damages to undertake restoration of this Plaintiff's credit standing.

G.  Costs for fees, filings, copying, travel, investigatory charges, legal and attorney fees, and other costs of collection related to the conduct of the Defendants Ziogas, C. Ziogas, L. and Halcyon.

H.  An Order by this Court for the removal of all unlawful, undocumented and unauthorized foreigners from the buildings (**See Writ of Mandamus**).

I.  An Order for Plaintiff to enter property and buildings to perform critical maintenance.

22

J.   Any other relief this Courts deems appropriate in law or equity.

BY THE PLAINTIFFS/ Pro Per



Ryder, Gary/   1350 East Main Street, Suite 777 Shrub Oak NY 10588, 787-435-3877,

oceannyc@aol.com

Verkaik, Sam/   411 7th Avenue, # 3L, Brooklyn, N.Y. 11215, 914-299-8674,

sam.verkaik@gmail.com

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

RYDER, GARY                                        Docket #_____

AND

VERKAIK, SAM

        *Plaintiffs*

BABIS ZIOGAS a/k/a ZIOGAS, CHARALAMPOS

And, ZIOGAS, ELANA, a/k/a, ZIOGAS, ZENLYANAYA

And, MFS SHIPMANAGEMENT CORP, And,

HALCYON INVESTMENTS LLC, And, HALCYON

INVESTMENTS INC, And, HALSTEAD PROPERTIES, INC,

And, UNITED STATES DEPARTMENT OF HOMELAND

SECURITY

        *Defendants*

                             APRIL 10, 2016

                             <u>EMERGENCY ORDER TO ENTER
PROPERTY/BUILDINGS</u>

**<u>PROPOSED ORDER</u>**

The Court upon reviewing the Complaint and the facts and averments within hereby

1

ORDERS the Defendants to allow access to the Plaintiffs and their vendors, tradesmen and artisans to enter upon the land and buildings located at 345 Round Hill Road, in the Town of Greenwich, Fairfield County to perform routine, seasonal and restorative services and work during the business hours of 9AM and 6PM on the weekdays of Monday, Tuesday, Wednesday, Thursday and Friday or until such time that the Defendants can provide to this Court reasons why such Order is burdensome or overreaching or other justifiable reason why this ORDER should be withdrawn.


This Request for Access is GRANTED/DENIED by this Court.



BY


_____

U.S.D.C.J.

Date: _____

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---

RYDER, GARY                                    Docket #_____

AND

VERKAIK, SAM

      *Plaintiffs*


BABIS ZIOGAS a/k/a ZIOGAS, CHARALAMPOS

And, ZIOGAS, ELANA, a/k/a, ZIOGAS, ZENLYANAYA

And, MFS SHIPMANAGEMENT CORP, And,

HALCYON INVESTMENTS LLC, And, HALCYON

INVESTMENTS INC, And, HALSTEAD PROPERTIES, INC,

And, UNITED STATES DEPARTMENT OF HOMELAND

SECURITY

                                              April 10, 2016

      *Defendants*


## EMERGENCY EX-PARTE HEARING FOR

## PRE-JUDICIAL REMEDY/ATTACHMENT

The Plaintiffs hereby respectfully request that this Court schedule an Ex-Parte hearing to

evaluate the merits of Plaintiffs' request for an a pre-judicial attachment of any identifiable

assets belonging to the Defendants Ziogas, C., Ziogas, L, Halcyon Investments or MFS

SHIPMANAGEMENT that are within the reach of this Court's PJR attachment powers in an

amount to be determined at a Hearing to secure payment for the damages and continuum of damages caused by, or created through the conduct of these Defendants. There exists a high degree of propensity that these Defendants will flee the jurisdiction of this Court and exit the United States, making them immune from recovery of any amount.

The Court hereby sets the date and time of such hearing of EX-PARTE judicial relief and attachment on_____, to be held at _____

_____

U.S.D.C.J

_____

Date

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

RYDER, GARY                                             Docket #_____

AND

VERKAIK, SAM

       *Plaintiffs*


BABIS ZIOGAS a/k/a ZIOGAS, CHARALAMPOS

And, ZIOGAS, ELANA, a/k/a, ZIOGAS, ZENLYANAYA

And, MFS SHIPMANAGEMENT CORP, And,

HALCYON INVESTMENTS LLC, And, HALCYON

INVESTMENTS INC, And, HALSTEAD PROPERTIES, INC,

And, UNITED STATES DEPARTMENT OF HOMELAND

SECURITY

                                        April 10, 2016

       *Defendants*


### **WRIT OF MANDAMUS**


The Plaintiffs seek a WRIT OF MANDAMUS where this COURT ORDER the United States

Department of Homeland Security and its division the Immigration and Customs Enforcement

Unit to purge the Plaintiff's buildings of the unauthorized aliens working there. DHS has ignored

previous requests to intervene by failing to initiate removal proceedings. The presence of illegal

and/or unauthorized aliens in the Plaintiffs' buildings creates a legal hazard for which the

Plaintiff have no other outlet or recourse to resolve amongst themselves using any lawful means except Mandamus.

It is the exclusive provenance of the Department of Homeland Security and its division the Immigration and Customs Enforcement to compel compliance with this Nation's immigration regulations. The Plaintiffs have no private right of action in this regard.

The Plaintiffs respectfully resort to this Court's Power to issue Mandamus requiring Department of Homeland Security and its division the Immigration and Customs Enforcement to purge the Plaintiffs' building located at 345 Round Hill Road, Town of Greenwich, County of Fairfield.

BY THE PLAINTIFFS, Pro Per

Ryder, Gary/   1350 East Main Street, Suite 777 Shrub Oak NY 10588, 787-435-3877,

oceannyc@aol.com

Verkaik, Sam/  411 7th Avenue, # 3L, Brooklyn, N.Y. 11215, 914-299-8674,

sam.verkaik@gmail.com

2